

# NUMBER 13-22-00504-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CARLOS GARCIA-CANTU, M.D.,                           Appellant,

## v.

AMY CHRISTINE GONZALEZ,                              Appellee.

## ON APPEAL FROM THE 389TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Longoria**

Appellant Carlos Garcia Cantu, M.D. challenges the trial court's denial of his motion to dismiss pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. In his sole issue, Cantu argues that appellee Amy Christine Gonzalez failed to provide a proper expert report as to causation under § 74.351. We affirm.

## I. BACKGROUND

In December 2021, Gonzalez filed her original petition, alleging that Cantu, an individual practicing medicine, lacerated her liver during a procedure to remove and biopsy a possible lipoma in Gonzalez's left breast on November 16, 2020. According to the petition, four days after the procedure and her same-day discharge, Gonzalez went into septic shock and was readmitted to the hospital on November 20, 2020. Gonzalez's petition stated that she was bringing a health care liability claim (HCLC) pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001 et seq.

On March 9, 2022, Gonzalez served the expert report of Fred J. Simon Jr., M.D. on Cantu pursuant to § 74.351. *See id.* Cantu filed his objections to the expert report within the required twenty-one days. Gonzalez responded, seeking to deem the expert report sufficient. Gonzalez later filed another motion to deem the report sufficient, a response to Cantu's objections, and a motion for a thirty-day extension to cure any alleged deficiencies. Cantu then filed his motion to dismiss pursuant to § 74.351. The trial court denied the motion to dismiss and granted Gonzalez thirty days to cure the deficiencies in her expert's report.

On June 28, 2022, Gonzalez served the amended report of Simon on Cantu. Again, Cantu filed objections to the report and moved to dismiss, arguing the report was insufficient. Gonzalez responded, filing a motion to deem the amended report sufficient. *See id.* § 74.351. The trial court denied the motion to dismiss. This interlocutory appeal followed. *See id.* § 51.014(a)(9).

2

## II. SECTION 74.351

By his sole issue on appeal, Cantu argues that the trial court erred in denying his motion to dismiss Gonzalez's HCLC because Gonzalez's expert report did not satisfy the causation element of the expert report requirements under § 74.351. *See id.* § 74.351.

### A. Standard of Review & Applicable Law

We review a trial court's decision on a motion to dismiss an HCLC for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). When reviewing matters committed to a trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.). But a trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). In conducting our review, we always consider that the Legislature's goal in requiring expert reports is to deter baseless claims, not block earnest ones. *Jackson v. Kindred Hosps. Ltd. P'ship*, 565 S.W.3d 75, 81 (Tex. App.—Fort Worth 2018, pet. denied); *Gonzalez v. Padilla*, 485 S.W.3d 236, 242 (Tex. App.—El Paso 2016, no pet.); *see also Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011).

Under the Texas Medical Liability Act (TMLA), a plaintiff asserting an HCLC must timely serve each defendant physician with at least one expert report, with a curriculum vitae for the expert whose opinion is offered, to substantiate the merits of the plaintiff's claim. TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(a), (i); *see also Mangin v. Wendt*, 480 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The purpose of the expert report requirement is to weed out unmeritorious claims, not to dispose of potentially meritorious claims. *See E.D. by & through B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022) (per curiam); *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam).

An expert report must provide a "fair summary" of the expert's opinions on (1) the applicable standard of care, (2) the manner in which the care rendered by the defendant physician failed to meet the standard of care, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see also Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). A "fair summary" of the expert's opinions means that, at the least, the report must state more than the expert's mere conclusions on the standard of care, breach, and causation; it must instead explain the basis of the expert's opinion so as to link the conclusions to the facts of the case. *See Jelinek*, 328 S.W.3d at 539; *Wright*, 79 S.W.3d at 52.

An expert report qualifies as an "objective good faith effort" sufficient to avoid dismissal if it discusses each element with sufficient specificity so that it (1) informs the defendant physician of the specific conduct that the plaintiff questions or about which the plaintiff complains and (2) provides a basis for the trial court to conclude that the plaintiff's

4

HCLC has merit. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017) (per curiam); *see also Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018). The expert report need not use any particular words, and it may be informal, "but bare conclusions will not suffice." *Scoresby*, 346 S.W.3d at 555–56. An expert report meets the minimum requirements for an expert report under the TMLA "if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant[ physician's] conduct is implicated." *Id.* at 557.

In determining whether an expert report constitutes an "objective good faith effort" to address each element, "a trial court may not draw inferences; instead, it must exclusively rely upon the information contained within the four corners of the report." *Puppala v. Perry*, 564 S.W.3d 190, 197 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (internal quotations omitted). Courts must view the report in its entirety, rather than isolating specific portions or sections, to determine whether it is sufficient. *See Baty*, 543 S.W.3d at 694; *see also Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 144 (Tex. 2015) (per curiam); *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 282 (Tex. App.—Austin 2007, no pet.) ("The form of the report and the location of the information in the report are not dispositive."). In reviewing the adequacy of an expert report, a trial court may not consider an expert's credibility, the data relied on by the expert, or the documents that the expert failed to consider at the pre-discovery stage of the litigation. *See Mettauer v. Noble*, 326 S.W.3d 685, 691–92 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Gonzalez*, 485 S.W.3d at 245.

For causation, the expert report must explain "how and why" the physician's breach proximately caused the plaintiff's injury. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459–60 (Tex. 2017). "In satisfying this 'how and why' requirement, the expert need not prove the entire case or account for every known fact; the report is sufficient if it makes 'a good-faith effort to explain, factually, how proximate cause is going to be proven.'" *Abshire*, 563 S.W.3d at 224 (quoting *Zamarripa*, 526 S.W.3d at 460).

> Proximate cause has two components: (1) foreseeability and (2) cause-in-fact. For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—*i.e.*, but for the act or omission—the harm would not have occurred.

> This is the causal relationship between breach and injury that an expert report must explain to satisfy the Act.

*Zamarripa*, 526 S.W.3d at 460. A causation opinion must provide a "straightforward link" between the alleged breach of the standard of care and the claimed injury. *See Abshire*, 563 S.W.3d at 225. The court's role is to determine whether the expert has explained how the negligent conduct caused the injury. *Id.* at 226.

## B.    Analysis

Cantu contends that neither the first nor the amended report of Simon "represents a 'good faith' effort to comply with the statute and applicable case law." Specifically, he argues that the reports "fail to set out a non-conclusory causation opinion" as to how Cantu's biopsy and care of Gonzalez "was even connected with, let alone proximately caused, [Gonzalez] damages."

6

Gonzalez brought an HCLC claim against Cantu alleging he was negligent. In Gonzalez's timely filed amended expert report, Simon states that he is a "board-certified General Surgeon" with more than thirty years of experience. He explains that he is familiar with the "proper method to perform a biopsy and ha[s] done so over [his] career." Simon's report provides one paragraph on the standard of care and one paragraph regarding Cantu's alleged breach of that standard, which Cantu does not challenge in his motion to dismiss. Simon's report, in two sentences, under the heading "Injuries Caused from the Breach of the Standards of Care," states:

> As a direct result of the breach in the standard of care, Ms. Gonzalez suffered from sepsis and was admitted into the hospital for treatment of the complications associated with the injury to the liver. She has also had complications from her pre-existing conditions and inability to take medications due to the liver injury.

Cantu argues that Simon's report does not state how the alleged breach of the standard of care, the laceration to the liver, caused Gonzalez's sepsis, hospitalization, or inability to take medications related to pre-existing conditions. In reviewing the expert report, we do not solely look to the statement regarding causation but must take the report as a whole. *See Baty*, 543 S.W.3d at 694. According to Cantu, the report leaves many unknowns for consideration and makes "no attempt to link Dr. Simon's conclusions to the facts."

Gonzalez responds that Simon's report meets the necessary requirements of an expert report under Chapter 74 as it makes a good faith effort to inform Cantu of his specific conduct that she is complaining about and provides a basis for the trial court to conclude that her HCLC has merit. *See Miller*, 536 S.W.3d at 513.

Simon's report, taken as a whole, informs Cantu that Gonzalez is alleging that he failed to perform her biopsy procedure with the appropriate standard of care by failing to maintain "proper visualization of the ailment during the procedure" and "operat[ing] deeper than what he [could] evaluate and see." As a result of this failure, Simon opines that Cantu lacerated Gonzalez's liver and failed to identify the post operative lacerations. After her release, Gonzalez suffered from sepsis due to the lacerations to her liver and was admitted to the hospital. Gonzalez contends that Simon's report is sufficient to meet the good-faith requirement.

While an expert cannot simply opine that the breach caused the injury, *Jelinek*, 328 S.W.3d at 539, an expert report also need not marshal all the plaintiff's proof necessary to establish causation at trial, and it need not anticipate or rebut all possible defensive theories that may ultimately be presented to the trial court. *Wright*, 79 S.W.3d at 52; *Cornejo v. Hilgers*, 446 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Simon's causation opinion is premised on two things: (1) Cantu accidentally lacerated Gonzalez's liver during her procedure, and (2) the laceration caused her injuries—sepsis and her inability to take certain prescription medications for preexisting conditions. Simon opines that "[a]s a direct result of the breach in the standard of care," Gonzalez "suffered from sepsis and was admitted into the hospital for treatment of the complications associated with the injury to the liver." Cantu argues that Simon's report does not "establish the required causal link between [Cantu's] alleged deviation . . . and the alleged injuries and damages in this case . . . ." We disagree.

8

Simon's report states that Gonzalez "went into septic shock because of a laceration to her liver and she was admitted" to the hospital for treatment. Cantu argues that Simon's report does not explain how the liver laceration caused Gonzalez to go into septic shock and therefore, it fails to connect the dots. At this early stage, however, in satisfying this "how and why" requirement, the expert need not prove the entire case or account for every known fact; the report is sufficient if it makes "a good-faith effort to explain, factually, how proximate cause is going to be proven." *Zamarripa*, 526 S.W.3d at 460. Simon's report does not need to exclude or rule out other possible causes of Gonzalez's injuries, it only needs to link together the conclusions with the facts—here Simon states that Cantu breached the standard of care and lacerated Gonzalez's liver and that liver laceration caused Gonzalez to be hospitalized for sepsis. *See Baylor Med. Ctr. v. Wallace*, 278 S.W.3d 552, 562 (Tex. App.—Dallas 2009, no pet.) ("Nothing in [§] 74.351 suggests the preliminary report is required to rule out every possible cause of the injury, harm, or damages claimed."); *Abshire*, 563 S.W.3d at 225 (stating that a causation opinion must provide a "straightforward link" between the alleged breach of the standard of care and the claimed injury). Because Simon's expert report adequately links his conclusions with the underlying facts, the trial court could have reasonably concluded that it constitutes an objective, good-faith effort to provide a fair summary of his opinions with respect to the causal relationship between Cantu's alleged breaches and Gonzalez's injury. *See Abshire*, 563 S.W.3d at 225–26; *see also Peabody v. Manchac*, 567 S.W.3d 814, (Tex. App.—Houston [14th Dist.] 2018, no pet.); *New Med. Horizons, II, Ltd. v. Milner*, 575 S.W.3d 53, 71 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

We overrule Cantu's sole issue.

### III.    CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Delivered and filed on the
18th day of April, 2024.